UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

B.D., a minor with a developmental
disability, by S.D. his sole legal guardian
and S.D. individually,

   Plaintiffs,

v.

OLGA DAZZO, *et al.*,

   Defendants.
_____/

Case No. 11-15347

Honorable Patrick J. Duggan

**<u>OPINION AND ORDER</u>**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 9, 2012.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
       U.S. DISTRICT COURT JUDGE

In this lawsuit, B.D., a minor with a developmental disability, and his mother, S.D. ("Plaintiffs") assert claims concerning the denial of certain benefits under the Medicaid program. The Complaint names as defendants governmental organizations involved in the provision of benefits, several of these organizations' officials and employees, a non-profit health care provider and its president, and an Administrative Law Judge who issued a decision affirming the denial of benefits. Presently before the Court are two motions to dismiss. The first of these two motions was filed on March 6, 2012 pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Washtenaw County Community Supports

and Treatment Services ("CSTS") and the following CSTS employees: Donna Sabourin, Elizabeth Spring, Christine Hapeman, John Depp, and Elizabeth Leadford ("the CSTS Defendants"). The second motion to dismiss was filed on March 27, 2012 pursuant to Rules 12(b)(1) and (6) by the Michigan Department of Community Health ("MDCH"), MDCH Director Olga Dazzo, and Administrative Law Judge Lisa Gigliotti ("the State Defendants"). These matters have been fully briefed, and the Court heard oral argument on June 12, 2012. For reasons set forth below, the Court grants the State Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and denies as moot the CSTS Defendants' motion to dismiss.

## I. Background

The federal Medicaid statute authorizes the states to establish medical assistance programs for low-income persons who meet certain requirements. MDCH is the state agency responsible for administering the Medicaid program in the State of Michigan. MDCH contracts with agencies that provide Medicaid services, including Defendant Washtenaw Community Health Organization. Washtenaw Community Health Organization, in turn, contracts with CSTS to arrange for services.

Plaintiff B.D. is currently seventeen years old and has been diagnosed with Autism Spectrum Disorder. This condition manifests itself in behavioral changes, some of which are violent in nature. His behavior has resulted in psychiatric hospitalization, emergency room treatment, and police intervention. He resides in Washtenaw County with S.D., his mother and sole guardian. B.D. has received educational services and therapy since he was three years old. His treatment has included psychiatric and psychotherapy services,

2

behavioral management intervention, developmental behavioral services, social skills training, tutoring, personal training, nutritional services, occupational therapy, massage therapy, music therapy, and family training.

In December 2006, the State determined that B.D. was eligible for Children's Waiver Program Services ("CWP services"), which are enhancements or additions to regular Medicaid coverage for children up to eighteen years of age. This program is directed at children who would normally be at risk of being placed in an institutional facility, and helps them to instead remain with their families. The services provided include family training, community living supports, transportation, and specialty services such as recreational therapy.

In February 2008, however, Washtenaw Community Health Organization and CSTS determined that B.D. no longer met the eligibility criteria for CWP services. Plaintiffs sought review of this decision in Washtenaw County Circuit Court. On January 5, 2010, Washtenaw Circuit Judge Donald Shelton reversed this decision, directing that MDCH provide B.D. with CWP services. Plaintiffs claim that at this point, the defendant officials and employees began to retaliate and discriminate against them by denying B.D. services to which he is entitled and by violating federal and state regulations with respect to B.D.'s medical care.

Plaintiffs subsequently moved to Livingston County, Michigan. B.D. sought CWP services through Community Mental Health Services of Livingston County, but his application was denied. Plaintiffs appealed this decision. After several adjournments, a hearing was scheduled for January 25, 2011 before Administrative Law Judge ("ALJ")

Lisa Gigliotti. The day before this hearing was to take place, Plaintiffs withdrew their appeal. Plaintiffs assert that the issue was moot because they had returned to their Washtenaw County residence.

In February 2011, Plaintiffs again requested CWP services for B.D. in Washtenaw County. This request was denied, although B.D. was approved for some services under the Serious Emotional Disorder Waiver. Plaintiffs appealed the denial of CWP services, and a hearing was scheduled for April 27, 2011. At Plaintiffs' request, the hearing was adjourned to June 20, 2011. ALJ Gigliotti also presided over this hearing, and denied as untimely two motions filed by Plaintiffs the day before the hearing. Plaintiffs' counsel left the hearing, waiving the opportunity to provide evidence on B.D.'s behalf.[1] In December 2011, ALJ Gigliotti issued a decision affirming the denial of CWP benefits. Plaintiffs are currently challenging this decision in Washtenaw County Circuit Court before Judge Shelton.

Plaintiffs filed this suit in the Eastern District of Michigan in December 2011. Their Amended Complaint, filed on February 7, 2012, includes the following claims: violation of 42 U.S.C. § 1983 (Count I); violation of the Medicaid statute and regulations (Count II); violation of the Michigan Medicaid State Plan, statute, and regulations (Count III); negligence (Count IV); intentional infliction of emotional distress (Count V); discrimination and retaliation in violation of the Americans With Disabilities Act ("ADA")

---

[1] Before counsel left the hearing, the ALJ indicated on the record that the hearing would continue and that by leaving, counsel would waive the opportunity to present evidence on her client's behalf.

(Count VI); violation of the Rehabilitation Act (Count VII); discrimination and retaliation in violation of Michigan's Persons With Disabilities Civil Rights Act (Counts VIII and IX); and a challenge to the constitutionality of Michigan's Recipient Rights dispute resolution system (Count X).  Plaintiffs seek damages and an order mandating that Defendants provide B.D. with certain benefits and services, including CWP services.  Plaintiffs also seek a declaration that Defendants violated their rights under Michigan and federal statutes and regulations.

The State Defendants have moved to dismiss Plaintiffs' claims pursuant to Rules 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim for relief.  The CSTS Defendants have moved to dismiss the claims against them pursuant to Rule 12(b)(6).

## II. The State Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) seeks to dismiss a complaint for lack of proper subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Proper jurisdiction is a requirement in determining the validity of a claim, and as such, Rule 12(b)(1) motions must be considered by a court prior to any other challenges.  *See Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776 (1946).  Motions to dismiss for lack of proper subject matter jurisdiction fall into two general categories: facial attacks and factual attacks.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack challenges the sufficiency of the pleading itself.  *Id.*  During a facial attack, the court must treat all material allegations in the complaint as true and construe the allegations in the light most favorable to the non-moving party.  *Id.*  A factual attack, on the other hand,

5

challenges the factual existence of subject matter jurisdiction. *Id.* "On such a motion, no presumptive of truthfulness applies to the factual allegations . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

## A. *Rooker-Feldman* Doctrine

The State Defendants argue that under the *Rooker-Feldman* doctrine,[2] the Court lacks subject matter jurisdiction over the present dispute. This doctrine holds that federal district courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005). The Supreme Court has stated, however, that *Rooker-Feldman* "has no application to judicial review of executive action, including determinations made by a state administrative agency." *Verizon, Md., Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 644 n.3, 122 S. Ct. 1753, 1759 n.3 (2002). The claims in this action focus on state administrative decisions and the subsequent review of those decisions in the state courts. The Court therefore concludes that *Rooker-Feldman* does not bar Plaintiffs' claims.

## B. *Younger* Abstention

The State Defendants argue that the Court should abstain from exercising jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 1746 (1971), as Plaintiffs' appeal of

---

[2] The *Rooker-Feldman* doctrine takes it name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983).

6

ALJ Gigliotti's December 2011 decision remains pending in state court. "Under *Younger*, 'absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions.'" *Devlin v. Kalm*, 594 F.3d 893, 894 (6th Cir. 2010) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 364, 109 S. Ct. 2506, 2516 (1989)). *Younger* has been extended to bar federal courts' interference in some state civil suits and administrative proceedings. *Id.* "'In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings.'" *Id.* (quoting *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 30 (6th Cir. 1984)). "*Younger* does not apply when 'the federal plaintiffs are also *plaintiffs* in the state court action' and 'the plaintiffs are not attempting to use the federal courts to shield them from state court enforcement efforts.'" *Id.* (quoting *Crawley*, 744 F.2d at 30) (emphasis in original). The Court concludes that *Younger* does not apply in this case. Plaintiffs instituted the state administrative proceedings and the ensuing appeals in the state courts, seeking to challenge the denial of benefits to B.D. Plaintiffs are in no way attempting to use their federal action to avoid state enforcement efforts; rather, they seek to compel action by the state. This suit is merely another avenue through which Plaintiffs seek to obtain relief.

The State Defendants also argue that the Court should abstain because Plaintiffs have failed to exhaust their appellate remedies. The State Defendants cite *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S. Ct. 1200 (1975), for this proposition. In *Huffman*, the defendant in a state court nuisance proceeding declined to appeal the state-court judgment, and instead filed a § 1983 action in the federal district court, seeking injunctive and declaratory

7

relief. *Id.* at 598, 95 S. Ct. at 1205. The district court enjoined the execution of the state-court judgment, but the Supreme Court reversed, concluding that the federal court should have abstained from interfering with the state proceedings. *Id.* at 611, 95 S. Ct. at 1211. Here, unlike in *Huffman*, the federal plaintiff is not a state-court defendant seeking to enjoin state proceedings. In attempting to apply abstention under such circumstances, the State Defendants read *Huffman* too broadly. The Supreme Court has held that the exhaustion of state remedies is generally not a prerequisite to bringing a § 1983 suit. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 500, 102 S. Ct. 2557, 2559 (1982) (citing cases). *Patsy* unequivocally reaffirmed this rule: "[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983. We decline to overturn our prior decisions holding that such exhaustion is not required." *Id.* at 516, 102 S. Ct. at 2568. *Patsy* recognized the apparent tension with *Huffman*, noting that "[t]he result today is also fully consistent with our decisions that a defendant in a civil or administrative enforcement proceeding may not enjoin and sidetrack that proceeding by resorting to a § 1983 action in federal court." *Id.* at 518, 102 S. Ct. at 2569 (White, J., concurring) (citing *Huffman*, 420 U.S. at 592, 95 S. Ct. at 1200). As noted above, Plaintiffs were not defendants in the state court action. Thus, their failure to exhaust state remedies does not weigh in favor of abstention.

## C. *Colorado River* Abstention

At oral argument, counsel for the State Defendants indicated that abstention is also appropriate under the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236 (1976). In *Colorado River*, the Supreme Court noted

8

that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* at 817, 96 S. Ct. at 1246.  Despite this, a federal court may abstain from exercising jurisdiction over a case in deference to a parallel state-court proceeding where abstention will promote "'[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817, 96 S. Ct. at 1246 (alteration in original) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S. Ct. 219, 221 (1952)).

To determine whether abstention is warranted, the Court follows a two-step process. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998).  First, the Court must determine whether the concurrent state and federal actions are actually parallel.  *Id.* "'Exact parallelism' is not required; 'it is enough if the two proceedings are substantially similar.'"  *Id.* at 340 (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). Cases are "substantially similar" where: (1) the parties are substantially similar and (2) the claims are predicated on the same allegations as to the same material facts.  *Id.*  If the proceedings are substantially similar, the Court must then consider a number of factors in determining whether abstention is appropriate: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Id.* at 340-41.  "These factors . . . do not comprise a mechanical checklist.  Rather, they

9

require 'a careful balancing of the important factors as they apply in a given case' depending on the particular facts at hand." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S. Ct. 927, 937 (1983)). The Court's task "is not to find some substantial reason for the exercise of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25-26, 103 S. Ct. at 942 (quoting *Colorado River*, 424 U.S. at 818-19, 96 S. Ct. at 1246-47).

Turning to the facts of this case, the Court concludes that the state court and federal proceedings are properly characterized as parallel actions. In the state-court action, these same plaintiffs challenge the denial of Medicaid benefits to B.D. Based on the parties' statements at oral argument, it appears that many (if not all) of the defendants in this action are also parties to the state-court suit. The claims also appear to overlap, as Plaintiffs' counsel indicated to the Court that she has raised Plaintiffs' state and federal law claims in state court. Furthermore, Plaintiffs' counsel indicated that one of her reasons for filing suit in federal court is to enforce Judge Shelton's January 2010 ruling against the state and its agents. The Court is satisfied that the state and federal actions here are "substantially similar."

The Court next considers the factors guiding the abstention analysis. The first two factors are easily resolved. There is no property at issue; this factor therefore weighs against abstention. *Romine*, 160 F.3d at 341. The inconvenience of the federal forum weighs somewhat in favor of abstention. Plaintiffs reside in Washtenaw County and have

filed their state court action in Washtenaw County Circuit Court, which is located about forty miles from the Detroit courthouse in the Eastern District of Michigan. Presumably, the federal forum is also somewhat less convenient for the CSTS Defendants. However, the Court does not believe that the distance between the respective courts is so great so as to be a major factor in the analysis.

The Court next considers the risk of piecemeal litigation. "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Id.* In this action, Plaintiffs seek the same relief as in their state-court suit under many of the same statutes and legal theories.[3] This could lead to conflicting results if this Court and the state court disagree with respect to B.D.'s entitlement to benefits or the constitutionality of Michigan's Recipient Rights system. As the Sixth Circuit has noted:

> "When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants are also endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications."

*Romine*, 160 F.3d at 341 (quoting *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 694 (7th Cir. 1985)). Given the overlapping nature of the claims in these two actions, the

---

[3] It is not entirely clear whether Plaintiffs' claims under the ADA, Retaliation Act, and Persons With Disabilities Civil Rights Act are included in their state court lawsuit, but the substance of Plaintiffs' claims under these statutes is that B.D. was improperly denied Medicaid benefits. *See* Compl. ¶¶ 128, 135, 138-40, 146. Thus, even if these statutory claims were not included in the state court lawsuit, there is a risk of conflicting adjudications due to the common underlying claim for benefits.

Court concludes that the risk of conflicting adjudications is significant. This factor weighs heavily in favor of abstention.

The same is true with respect to the order in which jurisdiction was obtained and the relative progress of the state and federal proceedings. Plaintiffs filed their state-court suit challenging the denial of benefits sometime prior to January 2010. They initiated the case that is currently before Judge Shelton in early 2011. Plaintiffs did not file their federal suit until December 2011. The Court inquired at the hearing about the status of the case before Judge Shelton, and was informed that the state court had been provided with the administrative record and was awaiting briefing from the parties. Thus, the proceedings appear to have advanced beyond the pleading stage. The Court believes that because the state court action was instituted first and has progressed to a greater extent than the federal action, this weighs in favor of abstention.

The Court next considers the source of the governing law. Plaintiffs assert claims under both federal and state law. "[T]he presence of federal-law issues must always be a major consideration weighing against [a district court's] surrender" of jurisdiction. *Moses H. Cone*, 460 U.S. at 26, 103 S. Ct. at 942. However, "the source-of-law factor has less significance [where] federal courts' jurisdiction . . . is concurrent with that of the state courts." *Id.* at 25, 103 S. Ct. at 942; *see also Romine*, 160 F.3d at 342 (holding that the state courts' concurrent jurisdiction over federal securities claims "seriously diminished" the importance of this factor in the abstention analysis). The state courts have concurrent jurisdiction over Plaintiffs' federal law claims. For example, state courts have concurrent jurisdiction over claims under § 1983, *Martinez v. California*, 444 U.S. 277, 284 n.7, 100

12

S. Ct. 553, 558 n.7 (1980), and the ADA. *Hapgood v. City of Warren*, 127 F.3d 490, 494 (6th Cir. 1997). Likewise, there is authority indicating that Michigan state courts have jurisdiction to hear Rehabilitation Act claims. *See Feyz v. Mercy Mem'l Hosp.*, 475 Mich. 663, 670, 719 N.W.2d 1, 5 (Mich. 2006); *Woolcott v. State Bd. of Educ.*, 134 Mich. App. 555, 560-63, 351 N.W.2d 601, 604-05 (Mich. Ct. App. 1984). Plaintiffs' challenge to the constitutionality of the Michigan Recipient Rights system is also subject to concurrent jurisdiction in the state courts. *See Garter Belt v. Van Buren Twp.*, 66 F. App'x 612, 615 (6th Cir. 2003); *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075 (6th Cir. 1998).

The Court is mindful that the policies underlying § 1983 weigh in favor of providing a federal forum for Plaintiffs' claims. "Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum v. Foster*, 407 U.S. 225, 239, 92 S. Ct. 2151, 2160 (1972). As the Supreme Court has noted, the predecessor of § 1983 was drafted during the Reconstruction era and established a federal remedy because at that time, "the state courts were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights." *Id.* at 240, 92 S. Ct. at 2161. Today, however, state courts are considered competent to adjudicate § 1983 claims, and such claims are routinely litigated in state courts. *See, e.g., Howlett v. Rose*, 496 U.S. 356, 110 S. Ct. 2340 (1990); *Martinez*, 444 U.S. at 284 n.7, 100 S. Ct. at 558 n.7. Plaintiffs nonetheless maintain that a federal lawsuit is necessary to safeguard B.D.'s rights. This is despite the fact that Plaintiffs have been successful in state court, having previously obtained an order from Judge Shelton requiring the state to

13

provide B.D. with benefits. Plaintiffs assert that they prevailed in the only ruling that was fully adjudicated. Pls.' Br. 15. Their apparent success in state court is inconsistent with the need for a parallel federal action. The Court believes that while the policies underlying § 1983 generally weigh against abstention by a federal district court, Plaintiffs' success in vindicating their rights in the state courts offsets this to some degree. Therefore, the Court does not believe that the source of the governing law weighs strongly in favor of or against abstention.

Finally, the Court considers the adequacy of the state court action in protecting Plaintiffs' rights. As noted above, the state court may adjudicate Plaintiffs' claims, and has already resolved previous claims relating to B.D.'s entitlement to benefits. There is no indication that Plaintiffs will be unable to obtain relief if they prevail in state court. In fact, counsel for the State Defendants admitted at oral argument that Judge Shelton has the power to enforce a determination that B.D. is entitled to benefits. The Court notes that Plaintiffs' counsel asserted that Judge Shelton has not issued a ruling with respect to all of Plaintiffs' claims. Although such a decision has not yet been forthcoming, the Court finds no reason to conclude that the state court will not adjudicate properly raised claims. This factor therefore weighs in favor of abstention.

The Court is mindful of its obligation to hear cases properly before it, but concludes that abstention is justified in this case. Plaintiffs' federal and state lawsuits involve the same or substantially similar parties, facts, and legal theories, and seek identical relief in the form of an order requiring the state to provide B.D. with benefits. The Court therefore believes that the risk of conflicting adjudications is particularly significant and weighs in

14

favor of abstention. The state-court case was filed first and appears to have progressed considerably, while this case remains at the pleading stage. The state court has concurrent jurisdiction to hear Plaintiffs' federal law claims and the power to grant the relief sought. The Court believes that this case presents the sort of exceptional circumstances justifying abstention under the doctrine of *Colorado River*. The Court accordingly concludes that the State Defendants' motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction should be granted.

### III. Conclusion

**IT IS ORDERED** that the State Defendants' motion to dismiss pursuant to Rule 12(b)(1) is **GRANTED**, and this action is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the CSTS Defendants' motion to dismiss is **DENIED AS MOOT**.

                                                s/PATRICK J. DUGGAN
                                                UNITED STATES DISTRICT JUDGE

Copies to:

Patricia E. Kefalas Dudek, Esq.
H. Daniel Beaton, Jr., A.A.G.
Jonathan S. Ludwig, A.A.G.
Jeffrey R. Clark, Esq.
Patrick R. Sturdy, Esq.
Jerold Lax, Esq.
Rebecca L. Takacs, Esq.
Cynthia L. Reach, Esq.
Carlito H. Young, Esq.
John M. Kruis, Esq.